UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WESLEY CADENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-24-715-R |
| | ) |
| ROCK RIDGE INSURANCE COMPANY; | ) |
| and OPENLY LLC, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Rock Ridge Insurance Company and Openly LLC's Motion for Partial Summary Judgment [Doc. No. 30]. Plaintiff Wesley Cadena responded [Doc. No. 37], Defendants replied [Doc. No. 43], and Plaintiff filed a sur-reply [Doc. No. 54]. The matter is now at issue. For the reasons that follow, Defendants' Motion is DENIED.

## BACKGROUND

It is undisputed that Plaintiff's wood shake roof was damaged by a hailstorm in the Oklahoma City metro area on April 19, 2023. Doc. No. 37 at p. 13. Plaintiff held a home insurance policy with Openly. *Id*. The local insurance agent was Jody Snowder—an independent insurance agent with Advantage Insurance Group authorized by Openly to sell Openly insurance policies and to help Openly insureds file claims.[1] *Id*.; Doc. No. 30 at p.

---

[1] Plaintiff contends that Snowder is Openly's agent pursuant to Okla. Stat. tit. 36, § 1435.3(A), and that notice of interior leaking was therefore imputed to Defendants, and that Defendants therefore retained Webber Roofing to inspect Plaintiff's property. Defendants dispute these assertions, but do not dispute that Snowder was authorized to sell

1

1. Plaintiff contacted Snowder, as directed by the terms of his Openly policy, about potential hail damage. Doc. No. 37 at p. 13. Snowder retained Webber Roofing to inspect Plaintiff's roof. *Id*. at p. 14.

On May 2, 2023, Webber Roofing inspected Plaintiff's roof. *Id*. at p. 13; Doc. No. 30 at p. 2. On May 19, 2023, Webber Roofing sent Snowder the May Webber Roofing Report. *Id*. The May Webber Roofing Report included 24 uncaptioned photographs and a narrative report indicating that there were 8+ hits on a 10x10 test square [Doc. No. 37-11]. The May Webber Roofing Report recommended roof replacement due to hail damage. *Id*. at p. 2.

Neither Plaintiff nor Snowder immediately filed a claim. Plaintiff testified that he did not know why there was a delay in filing his claim [Doc. No. 30-1 at p. 67]; *see also* Doc. No. 30 at p. 2; Doc. No. 37 at p. 14. Snowder testified that he delayed filing the claim because Plaintiff wanted to wait until severe weather season concluded before filing a claim [Doc. No. 43-1 at p. 23]. On July 9, 2023, Plaintiff texted Snowder, asking Snowder to let him know when they should get started on the "roof situation" [Doc. No. 43-2 at p. 3].[2] On

---

Openly insurance policies and help Openly insured file claims. The Court does not decide at this time whether Snowder was Openly's agent for purposes of retaining Webber Roofing.

[2] Defendants have accused Plaintiff of perjury based on the July 9th text message. Doc. No. 43 at pp. 1-2. They contend that the text message shows that Plaintiff knew that the claim had not yet been filed. *Id*. But there is also testimony that Plaintiff believed that the claim was filed when he contacted Snowder—a belief bolstered by Snowder's retention of Webber Roofing. Doc. No. 54 at pp. 2-3. And Plaintiff argues that he wanted to wait until the end of severe weather season to begin making repairs, not filing a claim. *Id*. at p. 4. So the evidence behind the delay in filing Plaintiff's claim is conflicting and disputed.

July 11, 2023, Snowder used the Openly online portal to file the claim. Doc. No. 30 at p. 2. He indicated that Plaintiff's property suffered exterior damage, but listed the number of interior rooms damaged as zero [Doc. No. 30-5 at p. 2]. At his deposition, Snowder testified that he was aware of leaks in Plaintiff's attic at the time he filed the claim, but did not mention them in the claim because he was unaware of any interior damage [Doc. No. 37-16 at pp. 28]. He also testified that he probably should have included the attic leaks in the claim. *Id*. at p. 29.

After Snowder filed Plaintiff's claim, there was a 20-day period in which the claim was assigned and reassigned to independent adjusters, before finally being assigned to Openly adjuster, Josh Foust [Doc. No. 37-20 at pp. 17-21]. Upon being assigned the claim, Foust retained Joseph Bragg of WJA Consultants to inspect Plaintiff's roof. Doc. No. 30 at p. 3; Doc. No. 37 at p. 15.

Bragg's inspection was scheduled for August 11, 2023, at a time when both Plaintiff's wife and Plaintiff's roofer, Steven Myers would be present. Doc. No. 37 at p. 15. According to Bragg, he spoke with both at the inspection, and testified that Plaintiff's wife told him that no interior inspection was needed, and that Myers opined that the damage was cosmetic, and declined to join him on the roof for another inspection. *Id*. Plaintiff's wife and Myers dispute Bragg's version of events. *Id*. They testified that Bragg arrived early and completed his inspection before either arrived at Plaintiff's house. *Id*. Plaintiff's wife further testified that she was not present and that she never spoke to Bragg. *Id*. Plaintiff testified that the reason his wife was to be present for the inspection was so she could let Bragg in the house to conduct an interior inspection. *Id*. Myers testified that he arrived after

3

Bragg completed his inspection and that Bragg never offered to go back to the roof for a reinspection. *Id*.

The WJA Report included over 100 captioned photographs and a weather report showing small hail on the reported date of loss [Doc. No. 30-9]. The WJA Report notes hail damage to the soft metal on the roof from the April 19, 2023 hailstorm, but indicates that the damage to the wood shingles was caused by wear and tear, as well as squirrels. *Id*. at pp. 1-2.

Upon reviewing the WJA Report, Foust determined that Plaintiff's roof suffered hail damage to the soft metal, and that the wood shingle damage was caused by wear and tear, as well as squirrels. Doc. No. 30 at p. 5. Plaintiff's policy excluded from coverage damage caused by wear and tear, as well as rodents, such as squirrels. *Id*. The estimated cost of repair was $17,336.69. *Id*. After the deductible and application of the exclusions, Openly's estimated payment was $4,386.30. *Id*. Plaintiff asked to speak to Foust's manager, John Hughes. *Id*. at p. 6. Hughes called Plaintiff. Doc. No. 37-1 at p. 15. Plaintiff did not answer. *Id*. Hughes left a voicemail. *Id*. The two never made contact. Doc. No. 37 at p. 18.

In November of 2023, Webber Roofing reinspected Plaintiff's roof. Doc. No. 30 at p. 6. Joe Washburn of Webber Roofing inspected the roof and created the November Webber Roofing Report [Doc. No. 30-16]. The November Webber Roofing Report included over 100 captioned photographs, a narrative report indicating significant hail damage to the wood shingles, and damage in the attic. *Id*. The November Webber Roofing Report recommends full roof replacement due to hail damage. *Id*. at p. 2. Plaintiff did not

4

submit the November Webber Roofing Report to Openly prior to this litigation. Doc. No. 30 at p. 6.[3]

Plaintiff sued Openly and Rock Ridge[4] for breach of contract, breach of the duty of good faith and fair dealing, and punitive damages relating to Openly's handling of Plaintiff's hail damage claim from the April 19, 2023 storm [Doc. No. 1-3]. Defendants removed the action to this Court [Doc. No. 1] and moved for summary judgment on Plaintiff's bad faith and punitive damages claims.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008) (citation and quotation marks omitted). Moreover, the Court's role is not "to weigh the evidence and determine the truth of the matter," but is instead to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 251-52 (1986).

---

[3] In his Response, Plaintiff contends that because Webber Roofing was originally retained by Snowder, he did not know whether the November Webber Roofing Report was sent to Openly. Doc. No. 37 at p. 19.

[4] Openly is Rock Ridge's managing general agent, and despite having no employees involved in the handling of Plaintiff's claim, Rock Ridge acknowledges that the duty of good faith and fair dealing is nondelegable and that it is equally liable for bad faith. Doc. No. 37-1 at p. 73; Doc. No. 30 at p. 8.

## DISCUSSION

**A. Plaintiff has established a genuine dispute of material fact regarding whether Openly breached the duty of good faith and fair dealing.**

Plaintiff contends that Openly handled his claim in bad faith by conducting an unreasonable and inadequate investigation. Doc. No. 37 at p. 25. Defendants respond that based on the evidence available to Foust at the time of his coverage determination, Openly had a reasonable, good faith belief that the wood shingles were not damaged by hail from the April 19, 2023 storm. Doc. No. 30 at pp. 9-10.

In Oklahoma, "an insurer has an implied duty to deal fairly and in good faith with its insured[.]" *Christian v. Am. Home Assurance Co.*, 1977 OK 141, ¶ 25, 577 P.3d 899. "[V]iolation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Id*. "To succeed on a bad faith claim, 'the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim.'" *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1314 (10th Cir. 2019) (quoting *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993)).

The Court must determine whether—"'in light of all facts known or knowable concerning the claim at the time plaintiff requested the company to perform its contractual obligation[,]'" *id*. at 1314 (quoting *Oulds*, 6 F.3d at 1439)—"'the insurer had a good faith belief in some justifiable reason for the actions…that are claimed violative of the insurer's duty of good faith and fair dealing[,]'" *id*. (quoting *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 28, 121 P.3d 1080) (brackets omitted). The Tenth Circuit has interpreted

Oklahoma law as requiring a two-step analysis when evaluating bad faith claims. *See Id*. at 1315.

"<u>First</u>, the court considers whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim." *Id*. (emphasis in original). If there is no legitimate dispute, bad faith is inferred. *Id*. (citation omitted). But if there is a legitimate dispute, there is no inference of bad faith. *Id*. (citation omitted).

<u>Second</u>, when there is a legitimate dispute, the Court "considers whether the plaintiff offered specific additional evidence to demonstrate bad faith." *Id*. (citation omitted). "[A] plaintiff may demonstrate bad faith by providing evidence that the insurer did not actually rely on the legitimate dispute, denied the claim for an illegitimate reason, or otherwise failed to treat the insured fairly[.]" *Id*. (internal citations, quotation marks, and brackets omitted). "A plaintiff may also show bad faith by providing evidence that the insured performed an inadequate investigation of the claim." *Id*. (citation omitted).

### 1. Openly legitimately disputed Plaintiff's roof claim.

The undisputed material facts show that there is a legitimate dispute regarding the value of the claim. Foust concluded that Plaintiff's roof suffered hail damage to the soft metals, but that damage to the wood shingles was not caused by hail based on a review of the photographs in the May Webber Roofing Report—which a Webber Roofing employee testified do not definitively document hail damage, *see* Doc. No. 30 at pp. 5, 9—as well as Bragg's inspection photographs, hail report, and narrative report in the WJA Report. Considering the information available to Foust at the time he made his coverage

determination, a reasonable juror could find in Defendants' favor. Openly's dispute was therefore legitimate.

### 2. Plaintiff has presented sufficient additional specific evidence to create a jury question for its bad faith claim.

A legitimate dispute is not "an impenetrable shield against a valid claim of bad faith." *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.*, 71 F.3d 335, 343 (10th Cir. 1995). The finding of a legitimate dispute does, however, "shift[] the burden to the insured to present additional evidence of bad faith." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006). Plaintiff has done so here.

Plaintiff contends that Openly unreasonably delayed and inadequately investigated his claim. Doc. No. 37 at p. 25. An insurer "'must conduct an investigation reasonably appropriate under the circumstances.'" *Shotts*, 943 F.3d at 1316 (quoting *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, ¶ 14, 824 P.2d 1105).[5] And "even if there is a legitimate coverage dispute between the parties, an insurer's failure to conduct a reasonable investigation may give rise to a bad faith claim." *Id.* at 1316-17. However, "'[u]nder Oklahoma law,…an insurer's investigation need only be reasonable, not perfect.'" *Id.* at 1317 (quoting *Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003)). So "'when a bad faith claim is premised on inadequate investigation, the [claimant]

---

[5] In their Reply, Defendants argue that Plaintiff is asking the Court to apply a more strenuous investigatory burden than required under Oklahoma law. Doc. No. 43 at p. 2. Plaintiff responds that Openly employees acknowledged that they were required to perform a "full, thorough, and complete" investigation of Plaintiff's claim. Doc. No. 54 at pp. 6-7. To the extent that this is not a dispute without a distinction, the Court applies settled Oklahoma law—that is, whether Openly's inspection was "reasonably appropriate under the circumstances."

must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information' that would have delegitimized the insurer's dispute of the claim.'" *Id*. at 1317 (quoting *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012)).

Plaintiff points to the following additional evidence of unreasonable delay and inadequate investigation to support his bad faith claim:

- Foust did not contact Webber Roofing to discuss the differences between the May Webber Roofing Report and the WJA Report, Doc. No. 37 at p. 21;

- Foust did not review the narrative portion of the May Webber Roofing Report, which his supervisor, John Hughes, described as unfair, *id*.;

- Foust failed to review the HailTrace Report submitted with the May Webber Roofing Report that showed significant hail on the date of loss, *id*. at p. 6;

- Foust failed to review the underwriting inspection and photographs taken six months prior to the date of loss, *id*. at p. 20;

- Foust did not consider hail damage to surrounding properties, *id*. at p. 8;

- Foust did not contact Snowder to discuss the claim or the investigation, *id*. at p. 20;

- Openly ignored or disregarded evidence of leaks into Plaintiff's attic, *id*. at pp. 16, 21;

- Openly's coverage decision was based solely upon the WJA Report, *id*. at p. 21; and

- Foust summarily discounted Webber Roofing's finding of hail hits sufficient to warrant roof replacement under Openly policy, *id*. at p. 20.

Defendants argue that Plaintiff misrepresented the facts to create a genuine dispute where none exists. Doc. No. 43 at p. 2. For example, Defendants contend that the record does not support Plaintiff's allegations that (1) Openly ignored evidence of leaks into

9

Plaintiff's attic, *id*. at pp. 4-6; (2) Openly ignored evidence of hail damage to Plaintiff's roof, *id*. at pp. 6-7; (3) Foust did not read the narrative portion of the May Webber Roofing Report, *id*. at p. 10; and (4) Hughes admitted that there was evidence of bad faith, *id*. at pp. 10-11. Moreover, Defendants dispute Plaintiff's assertion that Snowder was Openly's agent for claim handling purposes, such as retaining Webber Roofing). *Id*. at pp. 4-6.

Here, there is a significant amount of conflicting and disputed evidence.[6] At this stage of the litigation, the Court "does not weigh the evidence[,]" *see Scalia v. Ghosn*, 451 F.Supp.3d 1215, 1219 (W.D. Okla. 2020), but instead accepts Plaintiff's properly supported assertions as true, *see Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002), and resolves all reasonable inferences in Plaintiff's favor, *see 19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir. 1998). Doing so, the Court finds that Plaintiff has provided "minimally sufficient evidence" to defeat summary judgment. *See Teel v. State Farm Fire & Cas. Co.*, 645 F.Supp.3d 1242, 1247 (W.D. Okla. 2022). For example, there is conflicting evidence that if found in Plaintiff's favor would allow a reasonable juror to find: (1) that Openly was on notice that Plaintiff's attic had leaks and failed to conduct an interior inspection, (2) that Foust failed to review the May Webber Roofing Report,

---

[6] Pertinent to the instant disposition, the Court is not persuaded that Plaintiff misrepresented facts to create a genuine dispute as argued by Defendants. While some facts are certainly murky, Defendants have not provided evidence conclusively showing that the alleged misrepresented facts lack support in the record. One such example is whether Foust read the narrative portion of the May Webber Roofing Report. His deposition testimony suggests that he may have done so, but Plaintiff's evidence that (1) he was required to log his activities in the claim notes, (2) there is no log for reading the May Webber Roofing Report, and (3) there is such a log for reading the WJA Report, [Doc. No. 37-7 at pp. 163-165], places this fact in genuine dispute.

which his supervisor described as "unfair claims handling" and "bad practice," and (3) that Openly disregarded evidence of hail damage to Plaintiff's roof by failing to read the HailTrace Report submitted in the claim, failing to compare the post-loss photographs to the pre-loss underwriting inspection photographs, and failing to investigate hail damage in the surrounding area. Based on these disputed facts, a reasonable juror could find that Foust's investigation overlooked certain material facts and that a more appropriate investigation could have revealed evidence weakening Openly's dispute of the claim.

Accordingly, Defendants' Motion regarding Plaintiff's bad faith claim is denied.

**B. A determination on the issue of punitive damage is premature at this stage.**

Defendants also seek summary judgment on Plaintiff's claim for punitive damages. But "[w]hile the court concurs with defendant[s] that the issue of punitive damages may be properly decided at the summary judgment stage…the court opines that the recoverability of punitive damages in this action is best resolved at trial with the benefit of a complete record." *Anders v. Walmart Inc.*, CIV-21-159-F, 2021 WL 6135568, at *2 (W.D. Okla. Dec. 29, 2021) (citing *Newsome v. Tull*, CIV-18-791-HE, 2019 WL 5197567, *2 (W.D. Okla. July 22, 2019)). Defendants' Motion regarding punitive damages is therefore denied.

## CONCLUSION

Accordingly, Defendants' Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED this 16th day of May, 2025.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE